WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelly Ray Roberts,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-22-01921-PHX-GMS<br><br>**ORDER** |

Plaintiff Kelly Ray Roberts seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her supplemental security income under 42 U.S.C § 1382c(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 301–2113.  Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision will be reversed and the matter remanded for further administrative proceedings.

I.   **BACKGROUND**

Plaintiff was born in May 1984.  She has at least a high school education. Transferability of job skills is not an issue because Plaintiff does not have past relevant work. (Doc. 14-3 at 31.)

On July 16, 2013, Plaintiff filed a Title II application for disability and disability insurance benefits.  She also filed a Title XVI application for supplemental income on July 31, 2013.  In both applications, Plaintiff alleged disability beginning March 31, 2013. These claims were denied initially on October 4, 2013, and upon reconsideration on April 24, 2014.  Plaintiff filed a request for hearing.  On June 12, 2015, Plaintiff appeared with her attorney and testified at a hearing before the ALJ.  A vocational expert also testified at

the hearing. (*Id.* at 17–18, 79.) The ALJ issued a decision on July 6, 2015, stating Plaintiff had not been under a disability, as defined in the Social Security Act, from March 31, 2013, through July 6, 2015. (Doc. 14-4 at 4, 14.)

On October 18, 2019, Plaintiff applied for supplemental security income, alleging disability beginning April 12, 2013. The claim was denied initially on April 14, 2020, and upon reconsideration on October 2, 2020. On August 31, 2021, she appeared with her attorney and testified at a telephonic hearing before the ALJ. A vocational expert also testified. Plaintiff amended her alleged onset date to the protective filing date of her Title XVI application, October 18, 2019. (Doc. 14-3 at 17.) On November 3, 2021, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 32.) The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. (*Id.* at 2.) On November 10, 2022, Plaintiff sought review by this Court (Doc. 1).

## II.   STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Claims that are not actually argued in an appellant's opening brief are not considered on appeal. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). "[O]nly issues [that] are argued specifically and distinctly in a party's opening brief" are reviewed. *Id*. Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Failure to do so will only be excused when necessary to avoid a manifest injustice. *Id*.

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir.2005)). It is "relevant evidence [that] a reasonable [person] might accept

as adequate to support a conclusion" considering the record as a whole. *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Generally, when the evidence is susceptible to more than one rational interpretation, courts "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is 'highly deferential.'" *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.2009)).

### III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).[1]

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 18, 2019, the application date. (Doc. 14-3 at 21.) At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus with peripheral neuropathy, diabetic nephropathy causing chronic kidney disease, cervical degenerative disc disease, and obesity status-post bariatric surgery. (*Id.*) As for Plaintiff's

---

[1] At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *See id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

obstructive sleep apnea, sinus disease, hypertension, secondary hyperparathyroidism, vitamin D deficiency, hyperlipidemia, and anemia, the ALJ found these impairments non-severe but considered them in Plaintiff's RFC. (*Id.* at 21–22.) The ALJ also found that Plaintiff's medically determinable mental impairments of post-traumatic stress disorder, depression, and an anxiety disorder were non-severe, but the ALJ declined to include these limitations in the RFC. (*Id.* at 23–24.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 25.)

At step four, the ALJ found that Plaintiff has the RFC to perform sedentary work "with lifting and carrying of 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking for a total of 2 hours in an 8-hr workday; and sitting for a total of 6 hours. She requires the use of an assistive device for ambulation." (*Id.* at 26.) Plaintiff "can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs, but can never crawl or climb ladders, ropes, or scaffolds. [Plaintiff] must avoid concentrated exposure to extreme temperatures and even moderate exposure to hazards, including heights and moving machinery." (*Id.*)

The ALJ further found that Plaintiff has no past relevant work. (*Id.* at 31.) At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*)

## IV. ANALYSIS

### A. The ALJ Erred by Determining Plaintiff's Mental Impairments Were Non-Severe and Failing to Consider the Impairments Further.

Plaintiff asserts that the ALJ erred at step two by assessing her mental impairments as non-severe and failing to mention any of the mental health impairments beyond step two. (Doc. 18 at 7–8.) An ALJ may find an impairment not severe "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Wick v. Barnhart*, 173 Fed. Appx. 597, 600 (9th Cir. 2006) (quoting *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)); *see also* 20 C.F.R. § 404.1522(a). If none

of the plaintiff's impairments are severe, then she is not disabled. 20 C.F.R. 404.1520(c). Further, a plaintiff's impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* § 404.1509; 404.1520(a)(4)(ii).

The severity determination at step two is a "threshold showing." *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987). Step two's severity determination is focused on "identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Id.* at 153. As such, the step two determination is de minimis in nature, and "properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *Glanden v. Kijakazi*, 86 F.4th 838, 843–44 (9th Cir. 2023) ("[N]ine other circuits have also announced that they view step two as requiring no more than a de minimis showing.") (citations omitted); *Bowen*, 482 U.S. at 154.

Plaintiff's medically determinable mental impairments include post-traumatic stress disorder, depression, and an anxiety disorder. (Doc. 14-3 at 23.) On May 2, 2019, a wellness screen revealed that Plaintiff has a "very difficult" time doing work, taking care of things at home, or getting along with other people. (Doc. 14-9 at 205–06.) On October 21, 2019, Plaintiff's wellness screen revealed signs of anxiety and depression. (*Id.* at 195–96.) She reported experiencing approximately half of the symptoms on the wellness screen "nearly every day." (*Id.* at 195–96.) Dr. Rajesh Bhakta reported that Plaintiff had "[m]ajor [d]epressive [d]isorder, [r]ecurrent, [m]oderate." (*Id.* at 61.) A wellness screen on March 6, 2020, reported similar findings. (*Id.* at 160–61.) Plaintiff's symptoms made it "somewhat difficult" to do work, take care of things at home, or get along with others. (*Id.* at 161.) Dr. Bhakta again diagnosed Plaintiff with "[m]ajor [d]epressive [d]isorder, [r]ecurrent, [m]oderate." (*Id.* at 20.)

On March 10, 2020, Dr. Natalie Hurd reported that Plaintiff has a psychological diagnosis with limitations expected to last twelve continuous months. (Doc. 14-8 at 144.) The relevant diagnosis was post-traumatic stress disorder and agoraphobia. (*Id.* at 142.) Dr. Hurd accepted Plaintiff's reports of involuntary flashbacks of previous traumas and

difficultly focusing. (*Id.* at 142, 144.) Plaintiff "cannot be touched[,] . . . has significant problems leaving her home alone, and . . . does not socialize with others." (*Id.* at 142.) Moreover, Plaintiff cannot complete tasks without assistance due to low motivation and physical health problems. (*Id.* at 144.) Dr. Hurd does not believe that Plaintiff's "condition will [] significantly improve in the future." (*Id.* at 142.)

Nevertheless, Dr. Hurd also reported that Plaintiff scored 29/30 for understanding and memory. (*Id.* at 144.) Distractibility was not observed. (*Id.*) Depression symptoms were denied. (*Id.* at 142; Doc. 14-9 at 10, 16, 28, 32, 36, 40, 44, 48, 52, 57, 67, 71, 76, 81, 85, 89, 93, 97, 101, 105, 112, 116, 120, 124, 128, 132, 136, 144, 148.) Plaintiff also scored a 5/5 on a memory screening. (Doc. 14-9 at 14.) Accordingly, the record contains conflicting evidence. Yet, there is sufficient evidence to constitute a threshold showing that Plaintiff suffers from a combination of impairments.

Thus, the ALJ erred in finding that Plaintiff's medically determinable mental impairments were not severe. *See* (Doc. 14-3 at 23–25.) The ALJ also failed to consider Plaintiff's limitations when assessing the RFC and examining the vocational expert. *See* (Doc. 14-3 at 72–75); *cf. Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018) ("As stated, at Step 2, the ALJ found Loader's depression to be a 'medically determinable mental impairment.' The ALJ was therefore required to consider such impairment in assessing [claimant's] RFC . . . [and] in the hypothetical questions it posed to the vocational expert."); *Holden v. Comm'r of Soc. Sec. Admin.*, No. CV-21-01437-PHX-SMB, 2023 WL 2186574, at *5 (D. Ariz. Feb. 23, 2023) ("Therefore, if an ALJ determines that a claimant has medically determinable impairments, severe or not, it is harmful error if the ALJ fails to mention them when assessing the RFC" and posing hypothetical questions to the vocational expert.).

**B.     The ALJ Adequately Developed the Record.**

Plaintiff asserts that the ALJ was required to develop the record further because Dr. Minesh Rajpal's medical findings represent that Plaintiff's condition worsened significantly after the state agency consultant's report. (Doc. 18 at 11.) According to

Plaintiff, "ambiguity existed as to the current state of Plaintiff's kidney disease and related functional limitations . . . ." (*Id.* at 12.)

Nevertheless, the ALJ did consider the condition of Plaintiff's kidney disease and limitations. In assessing Plaintiff's RFC, the ALJ noted that Plaintiff progressed to stage four chronic kidney disease and labs showed high blood urea nitrogen and high creatinine, (Doc. 14-3 at 28), which is also stated in Dr. Rajpal's report, (Doc. 15-1 at 14–15). The ALJ concluded that Plaintiff's "diabetes mellitus, neuropathy, and nephropathy with chronic kidney disease would be expected to cause some degree of the pain, fatigue, mobility difficulties, and exertional intolerance that the claimant describes. Therefore, functional limitations are warranted for these impairments." (Doc. 14-3 at 28.) The medical evidence relied on, and conclusion reached by the ALJ is similar to Dr. Rajpal's report.

Thus, the ALJ did not err in developing the record. *See Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

**V.    CONCLUSION**

Accordingly,

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner of Social Security is **REVERSED AND REMANDED** for further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this case and enter judgment accordingly.

Dated this 5th day of August, 2024.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge